## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **FRANCES FORD,** | **Case No.  16-12612** |
| **Plaintiff,** | **Hon. Terrence G. Berg** |
| **v.** | |
| **MIDLAND FUNDING LLC; MIDLAND CREDIT MANAGEMENT INC., ENCORE CAPITAL GROUP INC., & LAW OFFICE OF MICHAEL R. STILLMAN, PC, d/b/a THE STILLMAN LAW OFFICE** | |
| **Defendants.** | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

Rex C. Anderson (P47068)
Attorney for Plaintiff
9459 Lapeer Rd., Ste. 101
Davison, MI 48423
(810) 653-3300
rex@rexandersonpc.net

Curtis C. Warner (P59915)
Warner Law Firm, LLC
350 S. Northwest HWY Ste. 300
Park Ridge, IL 60068
(847) 701-5290 (TEL)
cwarner@warnerlawllc.com

*Counsel for Plaintiff*

## STATEMENT OF ISSUES PRESENTED

1.     Should Defendants' motion to compel arbitration be denied when Defendants have not produced documentary evidence that an arbitration agreement exists for the "Original Account Number   488893018926028", "Charge Off Account Number   4888931990159852"; and have instead submitted documents related to an Account Number for billing statements produced by Defendants in this case related to account "4305 5003 5345 4674"?

2.     Should Defendants' motion to compel arbitration be denied wherein Stillman, from its file of documents provided to it from its client, Midland Funding, LLC, show an assignment on June 24, 2008, FIA Card Services, N.A., to Cavalry SPV 1, LLC, and there is no documentary evidence that Cavalry SPV 1, LLC, sold or transferred the account back to FIA Card Services, N.A., prior to the September 18, 2008, sale from FIA Card Services, N.A., to Midland Funding, LLC.

3.     Should Defendants' motion to compel arbitration be denied wherein Defendants litigated the issue in state court whether the debt was time barred?

4.     Should Defendants' motion to compel arbitration be denied wherein Midland Funding did not commence its claim on a breach of contract until after the statute of limitations had run on the debt referenced in its documents?

5.     If arbitration is compelled, should this matter be stayed, not

dismissed, under the FAA § 3?

6.     If arbitration is compelled, should the issue of whether the claims of the class members must be dismissed be submitted to the arbitrator?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Bazemore v. Jefferson Capital Sys., LLC.,* 827 F.3d 1325 (11th Cir. 2016);

*Buckley v. Small*, 52 Mich. App. 454; 217 N.W.2d 422 (Mich. App. 1974);

*Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co*., 706 F.2d 155, 159 (6th Cir. 1983);

*Harris v. Am. Postal Workers Union*, 198 F.3d 245 (6th Cir. 1999);

*In re: Cognate Cases*, 1:13-CV-1338,1:14-CV-34,1:14-CV-234, 2014 U.S. Dist. LEXIS 89159 (W.D. Mich. June 30, 2014); *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713 (6th Cir. 2012); *Prima Point Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404, 87 S. Ct. 1801 (1967); 9 U.S.C. § 3

## INTRODUCTION

Defendants Midland Funding LLC, Midland Credit Management, Encore Capital Group, (collectively the "Midland Defendants"), though their attorney, the Law Office of Michael R. Stillman, P.C., ("Stillman") collectively ("Defendants"), knowingly violated the United States Government's September 9, 2015 injunction prohibiting the Midland Defendants from filing suit on a time barred debt when they filed a time barred collection action against the Plaintiff, Ms. Frances Ford

("Ford"), and many others similarly situated. To sidestep class wide culpability, Defendants seek to remove this matter to the modern day Star Chamber on an individual basis and so continue its scheme of obtaining judgements on time barred debt on a massive scale. Because, Defendants have not proven an enforceable arbitration agreement exists, or that such an agreement was sent to Plaintiff, and that Defendants waived any right to arbitration litigating the same issue whether the subject debt was time barred, Defendants are not entitled to compel arbitration.

### PLAINITFF'S STATEMENT OF MATERIAL FACTS

1.      Defendants "Midland, MCM . . . are wholly-owned subsidiaries of Encore Capital and share common officers and directors with Encore Capital. Midland and MCM operate in concert with one another, and under the direct supervision and control of Encore Capital, to purchase and collect Consumer Debt on a massive scale." *In the Matter of: Encore Capital Group, Inc., Midland Funding, LLC, Midland Credit Management, Inc., et al.*, 2015-CFPB-0022, Doc. 1, Consent Order, p. 5 (CFPB Sept. 9, 2015) *available at* http://files.consumerfinance.gov/f/201509_cfpb_consent-order-encore-capital-group.pdf.

2.      Stillman filed a debt collection lawsuit against Plaintiff captioned *Midland Funding LLC Assignee of Bank of America v. Frances M. Ford,* Case No. C15C12670-GC, 67-3rd Judicial District Court, State of Michigan, (the "state court

matter"). (Exhibit A).

3.     A true and correct copy of the Complaint, including the attached exhibits, in the state court matter is attached as (Exhibit A).

4.     As part of an exhibit in the state court matter, a Visa or MasterCard Agreement was attached that was in effect as of 1999. (Exhibit A, displaying a 1999 copyright date at Pg 10).

5.     As to the Visa or MasterCard agreement that was in effect as of 1999, filed in the state court matter and all documents regarding the debt those documents are (per Nina Prashad's testimony) "provided by our client, [Midland Funding], and what's in our system." *See* (Exhibit B, Prashad Dep. Tr. 19:5-11).

6.     Defendants would not produce Ms. Prashad, on Monday November 21, 2016, which is the date Defendants later claimed their discovery responses were due. Instead, Ms. Prashad was produced on November 18, 2016 for her deposition during which Defendants refused Plaintiff's request to review Stillman's file on Ms. Ford's account claiming they still had another day under Rule 6 to respond to Plaintiff's discovery requests served October 17. Defendants failed to respond to Plaintiff's emails the previous day requesting this discovery be made available prior to the two depositions taking place on November 18, 2016. (Exhibit C). *See* (Exhibit B Prahad Dep. Tr. Pgs 9-10:17).[1]

---

[1] The Court may remember that during the September 19 telephonic conference that this precise behavior

7.     The Visa or MasterCard Agreement that was in effect as of 1999, and attached to the state court complaint in support, was purposefully withheld by Defendants from this Court for consideration.

8.      The Visa or MasterCard Agreement that was in effect as of 1999, attached to the state court complaint, requires that arbitration be submitted to the American Arbitration Association ("AAA").  (Exhibit A at page 10).

9.     Because of the Defendant Midland's conduct, AAA refuses to arbitrate claims involving Midland.  (Exhibit D).

10.    The Midland Defendants were asked to admit that Exhibit A, the document attached to its state court complaint, (only part of which Defendants provided to this court in support of its motion to compel arbitration), was a true and correct copy of the contractual terms that governed the subject account in December 2006 and; they responded by stating:

> "Midland can neither admit nor deny the request" further stating "it is Midland's understanding, that Plaintiff was bound by the terms and conditions[.]" (Exhibit E).

11.    Besides the 1999 agreement, it appears that the other document attached is part of a 2008 cardholder agreement, to which Midland has not produced any evidence that it was ever sent to Plaintiff.

12.    Defendants have not produced any evidence showing that Bank of

_____

was predicted by plaintiff's counsel and the Court instructed the defendants to cooperate in discovery.

America (BOA) sent any documents to Ms. Ford beyond December 2006.  *See* (Pg ID 184 ¶ 6; Pg ID 191).

13.    Once a credit card account has been charged off, the credit card issuer will cease sending statements and "remove the account from their financial records and receive a bad debt tax deduction." *See McDonald v. Asset Acceptance, LLC* 296 F.R.D. 513 (E.D. Mich. 2013) (*citing* I.R.C. § 166(a)(2)) *opinion vacated by* 2016 U.S. Dist. LEXIS 102182 (E.D. Mich. June 23, 2016).

14.    In the state court matter it was alleged that Ms. Ford, "herein is indebted upon open account or pursuant to contract, and defendant accepted the same. (Original Account Number 488893018926028)".  (Exhibit A ¶ 1).

15.    Midland has submitted to this Court as an exhibit that the account related to Ms. Ford that they purchased is identified as "Original Account Number 488893018926028" and "Charge Off Account Number  4888931990159852".  (Pg ID 189).

16.    All of the billing statements produced by Defendants in this case related to account "4305 5003 5345 4674".  *E.g.* (Pg ID 191).

17.    During the deposition of Stillman's attorney, Ms Prashad who signed the state court complaint, over Plaintiff's counsel's objections of coaching the witness, Stillman's lawyer acknowledged that the account numbers were different. (Exhibit B, Prashad Dep. Tr. 33:16 - 36:14.

18.    Although requested to produce all documents related to the subject debt in the state court lawsuit, including the written "Account Sale Agreement" referenced in the Bill of Sale governing the sales transaction between FIA and Defendants, none of the Defendants, have produced any "account sale" purchase agreement document.  *See* (Exhibit F at ¶¶ 1-3).

19.    At the time the state court lawsuit against Plaintiff was filed, the Midland Defendants were permanently enjoined from suing on time barred debts. *In the Matter of: Encore Capital Group, Inc., Midland Funding, LLC, Midland Credit Management, Inc., et al.*, 2015-CFPB-0022, Doc. 1, Consent Order, pp. 38-39    (CFPB    Sept.    9,    2015)    *available    at* http://files.consumerfinance.gov/f/201509_cfpb_consent-order-encore-capital-group.pdf

20.    When Stillman filed the state court lawsuit against Ms. Ford, it knew about the US Government's injunction against Midland suing on time barred debts. *See e.g. Hilton v. Midland Funding, LLC*,  Doc. 1, Complt., 2:15-cv-10322-LVP-APP (E.D. Mich.)

21.    In the state court matter, Ms. Ford filed Affirmative Defenses including that, "Plaintiff's [Midland's] claims are barred by the Statute of Limitations including but not limited [to] those prescribed in MCLA 445.901 et seq, MCLA 257.1301 et seq., MCLA 492.114, 16 CFR 433.1"  (Exhibit G - Ford's

verified answer to Midland's state collection complaint.

22.    Ms. Ford also signed an affidavit affirming that the debt Midland sued her for was not legally enforceable and she had not made any payments for least 7 years prior to filing of the collection action against her. (Exhibit G).

23.    Despite receipt of Ford's evidence submitted under oath, Defendants failed to immediately dismiss its libelous legal action and caused Ford to incur additional expense of legal fees and costs in attending at least two more court hearings and the time and cost of preparing for a trial.

24.    Stillman has filed a document with this Court that purports to demonstrate that on June 24, 2008, FIA Card Services, N.A., sold, transferred, assigned, sets-over, quitclaimed and conveyed the subject debt to Cavalry SPV 1, LLC, without recourse and without representations or warranties of any type, kind, character or nature, express or implied, subject to the Buyer's repurchase rights . . . ." (Pg ID 128, Stillman Mtn. Arb., Ex. B, a copy which is attached as Exhibit H)

25.    In regard to the debt Midland sued Plaintiff for in the state court matter, Defendants have not produced in discovery any evidence that the subject debt was transferred, sold or otherwise returned to FIA Card Services N.A., before the September 18, 2008, Bill of Sale between FIA Card Services N.A. and Midland Funding LLC.

26.    The September 18, 2008, Bill of Sale between FIA Card Services

N.A. and Midland Funding LLC does not identify an account number of a debt that relates to Ms. Ford.  (Pg ID 187).

27.    On December 2, 2008, Defendant Midland Credit Management sent Plaintiff a letter titled "PRE-LEGAL NOTIFICATION" stating in part, "If we don't hear from you or receive payment by 01-01-2009, we may proceed with forwarding this account to an attorney." (Exhibit I).

28.    At the time Midland Funding, LLC sued Ford, more than six years had elapsed since her use of or payment on the underlying debt.

## STANDARD OF REVIEW

In the Eastern District of Michigan, "[t]here is some disagreement about whether a motion to compel arbitration is a dispositive motion[.]" *Blankenship v. Superior Controls, Inc.,* 13-12386, 2014 U.S. Dist. LEXIS 138796 * 2 n.1 (E.D. Mich. Apr. 25, 2014).  "The [Federal Arbitration Act ("FAA")] does not expressly identify the evidentiary standard a party seeking to avoid compelled arbitration must meet. But courts that have addressed the question have analogized the standard to that required of a party opposing summary judgment under Rule 56(e) of the Federal Rules of Civil Procedure.  *Tinder v. Pinkerton Sec*., 305 F.3d 728, 735 (7th Cir. 2002). The "opposing party must demonstrate that a genuine issue of material fact . . . exists." *Id.*  "[T]he evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Id.*  "[I]f the motions

9

record reveals a material issue of fact, the FAA maintains that the court move summarily to trial." *Neb. Mach. Co. v. Cargotec Solutions, LLC,* 762 F.3d 737, 743 (8th Cir. 2014).

## ARGUMENT

### I.     Defendants have Not Established a Contractual Right to Compel Arbitration

"The first question to be decided [under § 4 of the FAA] is whether 'the making of the agreement for arbitration or the failure to comply therewith' is an issue." *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co*., 706 F.2d 155, 159 (6th Cir. 1983). The Court must determine whether there is an agreement to arbitrate a claim. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299-300 (2010). "Midland and MCM have aggressively pursued many individual citizens out of court for payment of bills they do not owe or that they have already paid. This occurs in part because the debt they purchase is ***so old*** and because the electronic files they acquire . . . ***lack substantiation and contain errors***." *State of Minnesota by its Attorney General, Lori Swanson v. Midland Funding, LLC and Midland Credit Management Inc.*, 2011 WL 1909418, p. 3, (Minn. Dist. Ct.) (Trial Pleading) (May 19, 2011) (emphasis added).

In this matter regarding Ms. Ford, Midland has submitted to this Court as an exhibit that the account related to Ms. Ford that they purchased is identified as "Original Account Number   488893018926028" and "Charge Off Account

Number   4888931990159852", and in the state court matter represented the same that their rights were on a contract "Original Account Number 488893018926028". Yet all of the documents produced during the discovery time period have been related to another account "4305 5003 5345 4674"  Defendants have not submitted to this Court or produced any evidence in discovery that account 488893018926028 contained any agreement to arbitrate.

Likewise, Defendants have not filed with the Court any evidence that the document they purport is a contract that includes an arbitration provision, is actually in truth and fact the actual terms that Ms. Ford was bound by.  Notably, the Midland Defendants were asked to admit that Exhibit A, the document attached to its state court complaint, was a true and correct copy of the contractual terms that governed the subject account in December 2006 and; they responded by stating "Midland can neither admit nor deny the request" further stating "it is Midland's understanding, that Plaintiff was bound by the terms and conditions[.]" (Exhibit E). Stillman further refused Plaintiff's counsel request to inspect Stillman's file of the documents that Midland Funding sent Stillman in support of the state court complaint and which Stillman's employee Nina Prashad, conveniently could not remember during her deposition.  Attaching any document is not sufficient evidence to support a motion to compel arbitration as "'[i]t is a basic tenet of contract law that a party can only advance a claim of breach of

written contract by identifying and presenting the actual terms of the contract allegedly breached.'" *Bazemore v. Jefferson Capital Sys., LLC.,* 827 F.3d 1325, 1131-32 (11th Cir. 2016) (*quoting Harris v. Am. Postal Workers Union*, 198 F.3d 245 (6th Cir.1999)).

Defendants further have not submitted a complete chain of title that Midland is the legal owner of the "Original Account Number   488893018926028" and "Charge Off Account Number   4888931990159852".  The Bill of Sale submitted to this Court, by Stillman, show on, "June 24, 2008, FIA Card Services, N.A., sold, transferred, assigned, sets-over, quitclaimed and conveyed the subject debt to **Cavalry SPV 1, LLC,** without recourse and without representations or warranties of any type, kind, character or nature, express or implied, subject to the Buyer's repurchase rights . . . ." (Exhibit H) Yet none of the Defendants have presented any evidence that the "Original Account Number   488893018926028" and "Charge Off Account Number   4888931990159852" was ever repurchased or legal title obtained again by Bank of America from Cavalry SPV 1, LLC, before it was purportedly sold to Midland Funding.   Therefore, Defendants have not meet their burden that Midland Funding has a contractual right to enforcement of anything, let alone the right to compel arbitration.

Finally the 1999 agreement submitted to this Court permits the arbitration to be submitted to the AAA, and the 2008 agreement was not sent to Plaintiff.

Midland due to its own misconduct has been barred by the AAA to proceed in arbitration before it and therefore cannot proceed under the 1999 agreement.

## II.   Defendants have Waived Any Right to Arbitration, if Such a Right Existed

Given Midland's corporate structure and that Stillman was acting as its agent in the state court matter, under agency principals, the waiver of one is the waiver of all. *See Tracinda Corp. v. DaimlerChrysler AG,* 502 F.3d 212, 225 (3rd Cir. 2007) (addressing the enforceability of a contractual jury waiver, holding that when such a provision "applies to a signatory corporation, [it] also applies to nonsignatory directors and officers seeking to invoke the waiver as agents of the corporation.") *c.f. Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH,* 206 F.3d 411, 416 (4th Cir. 2000) ("in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties."); *c.f. Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325 (7th Cir. 2016) ("A debt collector should not be able to avoid liability for unlawful debt collection practices simply by contracting with another company to do what the law does not allow it to do itself.")  Whether a waiver of an arbitration provision has occurred is a mixed question of law and fact. *Sweebe v. Sweebe*, 474 Mich. 151, 154; 712 N.W.2d 708 (Mich. 2006).

### A.   Defendants Litigated in State Court the Same Core Issue, Whether the Debt was Time Barred, and Therefore have Waived Their Right to Compel Plaintiff to Arbitrate the Issue Whether

**the Debt is Time Barred**

In the state court matter, Midland Funding, through its agent attorney Stillman, engaged in litigation with Plaintiff over the disputed issue of whether the debt that Midland Funding sued Plaintiff on was barred by the statute of limitations.  Defendants choose to litigate that disputed issue in state court, but now request this Court to send that very same "dispute" to arbitration.  Litigating the dispute over whether the subject debt was time barred is inconsistent with the purpose of arbitration. "'[A] party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) 'delaying its assertion to such an extent that the opposing party incurs actual prejudice.'"" *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012) (*citing Hurley v. Deutsche Bank Trust Co. Ams.*, 610 F.3d 334, 338 (6th Cir. 2010) (*quoting O.J. Distrib., Inc. v. Hornell Brewing Co*., 340 F.3d 345, 356 (6th Cir. 2003)).

Here Defendants allowed the state court lawsuit to run its course and only initiated a demand for arbitration over the same dispute when it was sued in federal court.  In *North West Michigan v. Stroud*, 185 Mich. App. 649; 462 N.W.2d 804 (Mich. App. 1990), in which the Court denied the motion to compel arbitration stating:

'After the initial pleadings neither party took any action to invoke the arbitration provisions. Both parties have actively participated in the litigation through discovery, pretrial and mediation. . . . With the passage of time, the Defendant's [sic] active participation in the litigation and the Defendant's [sic] failure to seek enforcement of the arbitration provision, the Court finds there has been a waiver of that contractual right.'

*Id. at* 651 ("sics" in original)

Defendants would have been collaterally estopped from denying in this matter in federal court that they did not file a time barred suit against Ms. Ford thereby conclusively establishing that Defendants violated the FDCPA. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 (1979) (*citing Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 328-329 (1971)) ("Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation."); *see also Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 333 (6th Cir. 2006) (*quoting Shorty v. Capital One Bank*, 90 F. Supp. 2d 1330, 1331 (D.N.M. 2000)) ("a number of the cases holding that the filing of a time-barred claim is a deceptive practice under the FDCPA rely on 15 U.S.C. § 1692e(2), which prohibits 'the false representation of . . . the character, amount, or legal status of any debt.'")

**B.    As the Statute of Limitations has Run on the Alleged Debt, so to has the Time in Which Electing Arbitration has Run**

Defendants are not entitled to arbitrate this matter because too much time has elapsed since the alleged breach of the account initially occurred. "Customarily, if a consumer loan has been delinquent for more than 180 days, the originating lender charges off the loan (including interest and any other charges) in its books." *Debt Buyers' Ass'n v. Snow,* 481 F. Supp. 2d 1, 4 (D.D.C. Jan. 30, 2006).

> There is general agreement that a demand for arbitration must be made within a reasonable time and may be denied if any equitable defense is applicable. 5 Am Jur 2d, Arbitration and Award, Cum Supp, § 21, p 42. This Court is persuaded that more than six years delay, equivalent to the statute of limitations in this case, was too long under the circumstances.
> * * *
> 'It is well settled that a party's contractual right to arbitration *may be lost through his conduct,* and delay in asserting a contractual right to arbitration is only one of several types of conduct which have been recognized as resulting in such loss'. (Emphasis supplied.)

*Buckley v. Small*, 52 Mich. App. 454, 456; 217 N.W.2d 422 (Mich. App. 1974) (*quoting* 25 ALR 3d 1171 § 2(a), p. 1176). Here not only has the statute of limitations run on the underlying contract, as demonstrated by the last December 2006 statement; on December 2, 2008, Defendant Midland Credit Management apparently sent Plaintiff a letter titled "PRE-LEGAL NOTIFICATION" and yet the Midland Defendants did nothing to attempt to initiate arbitration until it was sued on a class basis in this case. As such, since Defendants' arbitration demand has been made well pass the statute of limitations available to the underlying alleged contract, their ability to invoke arbitration has therefore been waived by

16

this lapse of time.

### C.    Wavier of Arbitration can be Inferred from a Debt Buyer's Purchase Agreement Related to the Subject Debt

Defendants although requested, have not produced the purchase agreements under which Midland Funding purportedly purchased the debt under.  If Midland is in breach of the contract it obtained its rights under, it should not be permitted to enforce those very same rights.

> [Typically a] **Purchase Agreement** provides that the sellers agree to 'sell, convey, transfer and assign to Purchaser and Purchaser agrees to purchase from Seller...all right, title, and interest of Seller in and to Purchased Accounts and Purchased Receivables.'  The [] Purchase Agreement contains an exhibit listing [the debtor's] account as one covered by the [] Purchase Agreement.  The [] Purchase Agreement is binding on the parties and their 'respective successors and permitted assigns.'

*Cox v. CA Holding, Inc*., 1:13-cv-01754-JMS-TAB, 2015 U.S. Dist. LEXIS 17820 * 8 (S.D. Ind. Feb. 15, 2015) (internal citations omitted).

*In re: Cognate Cases*, 1:13-CV-1338,1:14-CV-34,1:14-CV-234, 2014 U.S. Dist. LEXIS 89159 (W.D. Mich. June 30, 2014), the court in denying a motion to compel arbitration noted as a factor supporting the waiver of an arbitration clause was that, "when the debt buyer purchased the charged off accounts from [the original creditor], cardmember terms, arbitration agreements and even the prospect of active litigation were not important to the debt buyers. At least that is the story the relevant Purchase Agreements tell. The debt buyers expressly warrant to [the original creditor] that their 'primary purpose . . . is not to commence an action or

17

proceeding against c[]ardholders.'" *Id.* at * 7.  Here, the Midland Funding's have objected to producing its purchase agreement of the subject debt**,** and therefore has not submitted sufficient evidence to demonstrate that they did not provide a similar assurance that was given to the seller in *In re: Cognate Cases*.  Plaintiff requests this Court to draw an adverse inference that Midland Funding's purchase agreement contained the same primary purpose language as was found in *In re: Cognate Cases*.  *See Henderson v. Walled Lake Consol. Sch.,* 469 F.3d 479, 495 (6th Cir. 2006) (noting that it is permissible for the finder of fact to "draw an adverse inference" regarding "nonproduced evidence in one party's control")*.*

## III.   If Arbitration is Compelled, The Litigation in to be Stayed not Dismissed

The Supreme Court on multiple occasions has stated that 9 U.S.C. § 3 mandates a stay once arbitration is compelled.  In *Prima Point Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404, 87 S. Ct. 1801 (1967), the Court held that motions to compel arbitration under FAA § 2, which Defendants here moved under, "requires a federal court in which suit has been brought 'upon any issue referable to arbitration under an agreement in writing for such arbitration' ***to stay the court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement***."  *Prima Point Corp.*, 388 U.S. at 400 (*citing* 9 U.S.C. § 3) (emphasis added).

After *Prima Point Corp.*, Supreme Court's mandate for a district court to

stay a proceeding under FAA § 3, when compelling arbitration under FAA § 4, is consistant over the decades. *Shearson/American Express v. McMahon*, 482 U.S. 220, 226 (1987) (emphasis added) ("The Act also provides that a court **must stay its proceedings** if it is satisfied that an issue before it is arbitrable under the agreement, § 3; and it authorizes a federal district court to issue an order compelling arbitration if there has been a 'failure, neglect, or refusal' to comply with the arbitration agreement, § 4."); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2011) ("[F]ederal courts can enforce the agreement by staying federal litigation under § 3 and compelling arbitration under § 4.") *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2011). *See also id.* at 77 (Stevens, J.) (*dissenting*) ("The FAA, therefore, envisions a limited role for courts asked to stay litigation and refer disputes to arbitration.") The Sixth Circuit cases of *Arnold* and *Ozormoor* cited by Defendants are factually distinguishable, notably in *Arnold* the parties agreed to a dismissal, and do not override the mandatory stay language.

In *Facilities v. Nichols*, 811 F.3d 192, 195 (6th Cir. 2016), the Sixth Circuit recently affirmed the stay of the case before the district court pending the conclusion of arbitration, noting that 9 U.S.C. § 3 "provid[es] for a stay of federal lawsuit involving issues subject to an arbitration agreement." *Id.* at 195 (*citing* 9 U.S.C. § 3). In *Burden v. Check Into Cash of Ky., LLC*, 267 F.3d 483 (6th Cir. 2001), this Court noted that, "under section 3 of the FAA, when an action is

brought in federal court 'upon any issue referable to arbitration under agreement in writing for such arbitration,' the court must 'stay the . . . action pending arbitration once it is satisfied that the issue is arbitrable under the agreement.'"  *Id.* at 487 (*citing Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 18 L. Ed. 2d 1270, 87 S. Ct. 1801 (1967)).

In *Fazio v. Lehman Bros., Inc*., 340 F.3d 386, 392 (6th Cir. 2003), the Court stated:

> The Federal Arbitration Act ('FAA') provides that arbitration clauses in commercial contracts 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' 9 U.S.C. § 2. *If a court determines that the cause of action is covered by an arbitration clause,* it *must stay the proceedings until the arbitration process is complete*. 9 U.S.C. § 3.

*Fazio*, 340 F.3d at 392 (citing 9 U.S.C. § 3) (emphasis added); *Highlands Wellmont Health Network v. John Deere Health Plan*, 350 F.3d 568, 573 (6th Cir. 2003) (citing 9 U.S.C. § 3) ("If a court determines that a claim is covered by an arbitration clause, it must stay the proceedings until the arbitration process is complete."); *Yaroma v. CashCall, Inc*., 130 F. Supp. 3d 1055, 1060-61  (E.D. Ky. 2015) (*quoting Fazio*, 340 at 392) ("If the court determines that the dispute 'is referable to arbitration' under an agreement to arbitrate, the court must stay all further proceedings in the case 'until the arbitration process is complete.'")

District courts within this Circuit have correctly issued a stay of the case pending the resolution of the arbitration.  *Law Offices of Daniel C. Flint, P.C. v.*

*Bank of Am., N.A.*, 2016 U.S. Dist. LEXIS 140452 * 1 (E.D. Mich. Oct. 11, 2016) (*citing* Doc. # 18); *Hope Christian Fellowship v. Chesapeake Energy Corp.*, 2016 U.S. Dist. LEXIS 135737 * 28-29 (N.D. Ohio Sept. 29, 2016) (*quoting Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 625, 129 S. Ct. 1896, 173 L. Ed. 2d 832 (2009)) (emphasis in quotation added by the court) ("Section 3 of the [FAA] *entitles* litigants in federal court to a stay of any action that is 'referable to arbitration under an agreement in writing.'"); *Sangkharat v. Reynolds & Assoc., P.C.*, 2016 U.S. Dist. LEXIS 119761 * 6 (E.D. Mich. Sept. 6, 2016) (*citing* 9 U.S.C. § 3) (emphasis added) ("When presented with an issue that is referable to arbitration pursuant to a valid arbitration agreement, the court, upon the application of either party, ***must stay the suit and compel arbitration***."); *Drozdowski v. Citibank, Inc.,* 2016 U.S. Dist. LEXIS 117015 * 26-27 (W.D. Tenn. Aug. 31, 2016).

Courts in every district within the Sixth Circuit have over the past three decades followed the plain "shall stay" language in 9 U.S.C. § 3. *Investors Equity Group, Inc. v. Dean Witter Reynolds, Inc*., 1988 U.S. Dist. LEXIS 18138 * 12 (W.D. Mich. Apr. 11, 1988) ("Under § 3 of the Arbitration Act, the Court must stay proceedings on claims which it has determined to be arbitrable. 9 U.S.C. § 3. Whether non-arbitrable claims should be stayed pending arbitration is a matter left to the Court's discretion."); *Third Natl Bank v. Wedge Group, Inc*., 749 F. Supp.

851, 853 (M.D. Tenn. 1990) ("Thus, upon the motion of a party, a district court must stay an action pending arbitration if the issue at bar is referable to arbitration under a written arbitration agreement. 9 U.S.C. § 3."); *Newton v. Snap-On Tools Corp.*, 783 F. Supp. 1019, 1021 (E.D. Ky. 1991) ("Section 3 clearly and unequivocally states that whenever there is an issue that is subject to arbitration, if one of the parties timely requests arbitration, the district court must stay the action and refer the issue to arbitration."); *Wedding v. University of Toledo*, 884 F. Supp. 253, 256 (N.D. Ohio 1995) (*citing Al-Haddad Bros. Enterprises, Inc. v. M. S. Agapi*, 551 F. Supp. 956, 958 (D. Del. 1982)) ("A court must stay proceedings and compel the arbitration if, by the terms of the contract, the issues are arbitrable, and the party moving for arbitration is not in default."); *Dillard v. Signature Healthcare Fentress Cnty.*, 2015 U.S. Dist. LEXIS 121436 * 21, 2015 WL 5320544 (M.D. Tenn. Sept. 11, 2015) (*citing* 9 U.S.C. § 3) ("Under the FAA, if a court determines a cause of action is covered by an arbitration agreement, it must stay the proceedings until the arbitration is completed."); *Noffsinger-Harrison v. LP Spring City, LLC*, 2013 U.S. Dist. LEXIS 16442, 2013 WL 499210 (E.D. Tenn. Feb. 7, 2013) (same); *Blakley v. UBS Fin. Servs.*, 2013 U.S. Dist. LEXIS 31740 * 33 (S.D. Ohio, Jan. 30, 2013) *Adopted by, Motion granted by, Stay granted by Blakley v. UBS Fin. Servs.*, 2013 U.S. Dist. LEXIS 31740 (S.D. Ohio, Mar. 7, 2013) (*citing Glazer v. Lehman Bros., Inc.,* 394 F.3d 444, 451 (6th Cir. 2005) ("as

the undersigned finds that all of plaintiff's claims are subject to the arbitration agreement contained in the LOU or, alternatively, the FMCP, the Court must stay plaintiff's lawsuit."); *Overlook Terraces, Ltd. v. Tamko Bldg. Prods*., 2015 U.S. Dist. LEXIS 119325, 2015 WL 9906298 (W.D. Ky. May 21, 2015) *Adopted by, Stay granted by Overlook Terraces, Ltd. v. Tamko Bldg. Prods*., 2015 U.S. Dist. LEXIS 119323 (W.D. Ky., July 22, 2015) ("Under the FAA, federal district courts are to stay judicial proceedings when an issue must be referred to arbitration. *Walker v. Ryan's Family Steakhouses, Inc*., 400 F.3d 370, 376 (6th Cir. 2005). *See gen. ATAC Corp v. Arthur Treacher's, Inc*., 280 F.3d 1091, 1095 (6th Cir. 2002)(discussing the legal effect of an order staying litigation under the FAA)").

In *Arnold v. Arnold Corp.*, 920 F.2d 1269 (6th Cir. 1990), relied by Defendants, this Court examined the applicability of the 1998 amendments to the Judicial Improvements to Access to Justice Act which amended 9 U.S.C. § 15 Appeals, currently codified at 9 U.S.C. § 16, to conclude that the Court had jurisdiction over the appeal. *Id.* 1273-74 ("The issue before this court is thus whether the district court's order of clarification constitutes a final judgment or interlocutory order.") In *Arnold*, the applicability and meaning of the "shall stay" language in 9 U.S.C. § 3 was not at issue, the sole issue was this Court's jurisdiction under 9 U.S.C. § 15.

*Green v. Ameritech Corp.,* 200 F.3d 967 (6th Cir. 2000), did not establish

that under 9 U.S.C. § 3 that district courts had the ability to simply dismiss a case pursuant to the parties agreement, rather than follow the sections mandatory stay language. *Id.* at 970.    In *Green*, the Court found that under the parties' contract, that the contract itself provided for diversity jurisdiction to hear an appeal of the arbitrator's award, even though a new case should have been opened due to the dismissal, and reversed and remanded for reinstatement the arbitrator's award finding that "although the arbitrator's opinion was minimal, it was nevertheless adequate." *Id.*

It is especially important to stay this matter as there is no guarantee that Midland will actually pay the costs associated with arbitration, and the American Arbitration Association ("AAA") will not "administer this claim and any other claims between Midland Funding, LLC and its consumers" as "the business failed to comply with the AAA's policies regarding consumer claims." (Exhibit D).

Also, because Midland is asserting its right to arbitrate under an FIA Card Services, Inc., credit card, whether or not there is the ability to arbitrate such matters after the settlement in *Ross v. Bank of America, N.A.*, MDL No. 1409, Civ. No. 07-7116 (S.D.N.Y. 2010), is a threshold issue for the arbitrator to decide. *Snyder v. Cach, LLC*, 2016 U.S. Dist. LEXIS 158996 (D. Hawaii Nov. 16, 2016).

## IV.    If the Court has No Subject Matter Jurisdiction it cannot Dismiss the Class Claims

The Defendants ask this Court to find that no subject matter jurisdiction

exists, but at the same time seeks an Order dismissing the class claims.   Even Defendants point out that, "[t]he arbitration provision in the Agreement expressly states that 'any claim, dispute or controversy' shall be decided by arbitration 'including this Arbitration clause" and that 'gateway' questions of 'arbitrability' were issues for the arbitrator to decide[.]" (Pg ID 171-72).   Thus if the Court has no jurisdiction other than compelling arbitration, it should leave the question to whether the matter can continue as a class to the arbitrator.

## CONCLUSION

WHEREFORE, the reasons stated above, Plaintiff requests this Honorable Court to deny Defendants' motion to compel arbitration, and if however the Court compels arbitration, to stay this matter without dismissing the class allegations.

Respectfully submitted,

Dated: January 6, 2017                                              /s/ Curtis C. Warner

Rex C. Anderson (P47068)
Attorney for Plaintiff
9459 Lapeer Rd., Ste. 101
Davison, MI 48423
(810) 653-3300
rex@rexandersonpc.net

Curtis C. Warner (P59915)
Warner Law Firm, LLC
350 S. Northwest HWY Ste. 300
Park Ridge, IL 60068
(847) 701-5290 (TEL)
cwarner@warnerlawllc.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 6, 2017, I served the foregoing document with the Clerk of the Court using the ECF system which will automatically send notification of such filing to the following:

Monica N. Hunt, Esq.
Attorney for Stillman Law Office
30057 Orchard Lake Rd., Ste. 200
Farmington Hills, MI 48334
mhunt@stillmanlaw.com


Robert M. Horwitz
Theodore Seitz
Aaron Vorce
Attorneys for Defendants Midland Funding,
Midland Credit, Encore Capitol
Dykema Gossett, PLLC
400 Renaissance Center
Detroit, MI 48243
Phone:(313)568-6800
Fax: (855)246-2129
rhorwitz@dykema.com
TSeitz@dykema.com
avorce@dykema.com


Dated: January 6, 2017                      */s/ Rex C. Anderson*
                                                  Rex C. Anderson
                                                  Attorney for Plaintiff
   9459 Lapeer Rd., suite 101
   Davison, MI 48423
   (810) 653-3300,
   rex@rexandersonpc.net
   (P47068)